

## In The
## Court of Appeals
## Sixth Appellate District of Texas at Texarkana

_____

No. 06-08-00005-CR
_____

SANDRIA LYNN SHELDON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 7th Judicial District Court
Smith County, Texas
Trial Court No. 007-1050-06

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Sandria Lynn Sheldon, having been convicted by a jury of felony driving while intoxicated (DWI) and having been assessed a ten-year prison term and a fine of $10,000.00, files this appeal. We affirm the judgment.

**EVIDENCE ADDUCED**

Trooper (now Sergeant) Jim Burkett received radio notification of a possible vehicular accident on a farm-to-market road in Smith County. Upon arriving on the scene, he discovered that a fire truck had already arrived and was on the scene. In front of the fire truck in the driving lane was an automobile in which Sheldon was seated behind the wheel. She was alone in the automobile and no one else was in the vicinity who might have been the operator. Approaching the driver's door and attempting to engage Sheldon in conversation, he observed that Sheldon had "extremely droopy eyes and very, very slurred speech." At that time, Burkett observed that Sheldon did not seem aware of her environment, but that she related to him that the vehicle had run out of gas and would not operate. Sheldon attempted to start the engine and, although it sputtered some, it would not start. She could not relate her destination and was unsure of the place from which she had left, a situation which, one must observe, is closely akin to the old East Texas saying that "she didn't know if she was coming or going." Because Burkett detected no odor of alcohol on Sheldon and because she had apparently recent needle track marks on her arms, Burkett suspected that her confused state was due

2

to drug abuse and not to alcohol consumption.  Sheldon represented at that time that she had taken three Fenatyl capsules.  Sheldon had mucus from her nose running down her face.

Burkett had Sheldon attempt to perform the basic field sobriety tests.  There were some which she simply could not perform and the others gave Burkett strong indicators of intoxication.  From these facts and those indicators, Burkett determined that Sheldon did not then possess the normal use of mental or physical faculties due to the consumption of drugs.

Burkett called for a wrecker to tow in the car, which had been pushed to the side of the road, for storage.  In searching the car for possessions preparatory to turning it over to the tow truck driver, Burkett located a single used syringe, a number of unused syringes, a bottle marked as containing Oxycontin (although the prescription date was old and it contained no such pills) and three silver spoons.  Each of the silver spoons showed evidence that they had been heated from the bottom and each contained a white residue.

Burkett then loaded Sheldon into his patrol car and transported her to the hospital in Tyler so that samples of her blood could be taken.  While at the hospital, Sheldon indicated that she had been chewing up Hydrocodone (800 mg. per day) for four years and then said that she had been injecting Hydrocodone.

Eduardo Padilla, a chemist with the Texas Department of Public Safety crime laboratory in Austin, testified that the tests on Sheldon's blood indicated the presence of Alprazolam (commonly known by its brand name of Xanax) in a concentration level of 0.10 milligrams per liter in the

3

sample along with possible amphetamines. He further opined that the level of Alprazolam found in Sheldon's blood was sufficient to make a person sleepy and affect the ability to operate a vehicle. For reasons not fully developed, no test was made for the presence of Hydrocodone in the blood sample.

Joyce Sheldon,[1] the appellant's mother, testified that Sheldon had been involved in a horrific vehicular collision some years before, had been grievously injured, and suffered continuing pain from it; Sheldon had been taking Oxycontin because of her pain and had been using it intravenously because it worked more quickly that way. Joyce also said that she believed that there were other prescribed medications which Sheldon was required to inject as well.

**POINTS OF APPEAL**

For all practical purposes, Sheldon raises the factual and legal sufficiency of the evidence to sustain her conviction.[2]

---

[1]We will refer to Joyce Sheldon by her first name to avoid confusion.

[2]Sheldon's appellate attorney points out that he had been instructed by his client to raise ineffectiveness of counsel as a third point of error. Although he raises that point and makes some analysis of it as directed by his client, he candidly points out that the record does not support that "what trial counsel did or did not do is what got [Sheldon] convicted" and that it does not reflect "trial counsel's performance to be short of an objective standard of reasonableness." Upon a reading of the record of trial, we fully concur with that conclusion and limit our discussion of it to this footnote.

**STANDARD OF REVIEW**

In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000).

In a factual sufficiency review, we review all the evidence, but do so in a neutral light and determine whether the evidence supporting the verdict is so weak or is so outweighed by the great weight and preponderance of the evidence that the jury's verdict is clearly wrong or manifestly unjust. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006); *Watson v. State*, 204 S.W.3d 404, 414–15 (Tex. Crim. App. 2006); *Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996).

In a factual sufficiency review, we are to afford "due deference" to a jury's determinations. *Marshall*, 210 S.W.3d at 625. "Although an appellate court reviewing factual sufficiency has the ability to second-guess the jury to a limited degree, the review should still be deferential, with a high level of skepticism about the jury's verdict required before a reversal can occur." *Roberts*, 220 S.W.3d at 524.

The difference between the two standards is that the former requires the reviewing court to defer to the jury's credibility and weight determinations while the latter permits the reviewing court

to substitute its judgment for the jury's on these questions "albeit to a very limited degree." *Marshall*, 210 S.W.3d at 625.

**FACTORS FOR PROOF AND APPLICATION TO THESE FACTS**

In a prosecution of a case of third-degree felony DWI (Tex. Penal Code Ann. § 49.04 (Vernon 2003)), there are several elements which the State must prove. The offense of DWI requires the State to identify the defendant, it must show that the defendant was intoxicated, and it must prove that the defendant was operating a motor vehicle in a public place during that period of intoxication. In order for it to be enhanced to the felony range, it must show that the defendant had a previous conviction of DWI.

On appeal, Sheldon claims that there is neither evidence to show that Sheldon was operating the automobile at any time nor to show that she was intoxicated at the time of the operation of the vehicle.

Certainly, no one testified that he witnessed Sheldon motoring down the road in the car; no one could say with definiteness that she did not sit in the car in the middle of the road and proceed to get high on drugs. The evidence that Sheldon was both operating the automobile and was also simultaneously intoxicated is all purely circumstantial. However, neither we nor the jury are constrained from looking at circumstantial evidence as evidence of guilt. Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. On appeal, the same standard of review is used for both

6

circumstantial and direct evidence cases. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim App. 2007).

Certainly, no witness testified to having seen Sheldon pilot the car. However, she was found sitting alone behind the wheel of an automobile which was situated in the driving lane of a public highway. The vehicle was registered in the name of her mother. The jury could draw reasonable inferences from the totality of these facts that Sheldon had driven it to that place. *See Barton v. State*, 882 S.W.2d 456, 458 (Tex. App.—Dallas 1994, no pet.). To be legitimate and permissible, an inference must be described as a logical consequence of the facts present in evidence, and there must be a logical and rational connection between the facts in evidence and the fact inferred. *United States v. Michelena-Orovio*, 702 F.2d 496, 504 (5th Cir.), *aff'd on reh'g en banc*, 719 F.2d 738 (5th Cir. 1983); *Reedy v. State*, 214 S.W.3d 567, 585 (Tex. App.—Austin 2006, pet. ref'd). It is a logical step from the circumstances for the jury to find that Sheldon was operating the vehicle to the place it was found. It would not be a reasonable assumption that she had strolled along the highway, found her mother's car parked in the driving lane, and decided to enter it and rest; it is reasonable not to consider the possibility that some unidentified person drove it there and then wandered off, never to return; the jury need not rule out a possibility that the car was constructed on site, fell off the back of a tow truck, was left behind by a band of roving gypsies, or was blown there by a strong wind. There was proof beyond a reasonable doubt that the car was driven by Sheldon to the place where it sat when she was discovered in it.

7

Sheldon does not challenge that there was sufficient evidence that she was impaired through the ingestion (either orally or intravenously) of drugs. However, she raises the question as to whether there was proof that she was in that condition at the time she drove the car. If one first accepts the fact that there was proof beyond a reasonable doubt that Sheldon had piloted the car to the place where its fuel supply was exhausted but that she was not intoxicated when that occurred, there remains only one alternative: that she drove the car until it ran out of gas and, so long as she was stranded in the middle of the road, decided to simply sit in the car and then become intoxicated on drugs. Drawing on reasonable inferences from the circumstances, the jury was entitled to find to the contrary.

The evidence is both legally and factually sufficient to sustain Sheldon's conviction. These points of error are denied.

We affirm the judgment.


Bailey C. Moseley
Justice


Date Submitted:     June 12, 2008
Date Decided:       June 13, 2008

Do Not Publish